**ELIGA TILO and VASAGA TILO for the TILO FAMILY,
EUGENE B. PALYO and LAFOAINA F. PALYO, Claimants,**

**v.**

**VA`AILEPU`A O.H. DANIELSON, Objector.**

---

**PONAUSUIA LUSI FALE, Intervenor.**

High Court of American Samoa
Land and Titles Division

LT No. 18-93

January 29, 2004

Before RICHMOND, Associate Justice, MAMEA, Associate Judge, and TAPOPO, Associate Judge.

Counsel: For Claimants Eliga Tilo and Vasaga Tilo for the Tilo Family, Tauivi Tuinei
For Claimants Eugene B. Palyo and Lafoaina F. Palyo, S. Salanoa Aumoeualogo
For Objector Va`ailepu`a O.H. Danielson and the Tufaga Family, Asaua Fuimaono
For Intervenor, Arthur Ripley, Jr.

OPINION AND ORDER

## Procedural History

The parties seek resolution of long-standing issues pertaining to the offer to register a certain separation agreement. The agreement was signed on July 8, 1992, by the Claimants Eliga Tilo ("Eliga"), then the *sa`o* ("head chief") in control of his family's communal land, and Eugene B. Palyo ("Eugene") and Lafoaina F. Palyo ("Lafoaina") (together "the Palyos"), as family members. Eliga was registered as the Tilo titleholder on November 23, 1948.[1] The agreement purported to separate a house claimed by the Palyos ("the house at issue") from the Tilo family's communal land in the village of Aua ("the land at issue"), pursuant to A.S.C.A. §§ 37.1501-1506. The agreement named the land "Amauto." The Tilo family is now represented by Claimant Vasaga Tilo ("Vasaga"), the present family *sa`o*. Vasaga was registered as the Tilo titleholder on June 14, 1999. He will therefore be formally added as a party to this action at this time.

On the same date, the separation agreement was offered for registration, and the Territorial Registrar initiated the required 30-day notice period. Objector Va`ailepu`a O.H. Danielson ("Va`ailepu`a") timely objected to the proposed registration. Va`ailepu`a acted on behalf of himself and, pursuant to a 1992 power of attorney, Tufaga Sapati Niumatalolo ("Tufaga"), *sa`o* of the Tufaga family. Va`ailepu`a claimed that "Amouto," apparently the more common variant of the spelling "Amauto," is the Tufaga family's communal land, gifted to his ancestor in the Tufaga family, which has long recognized that the property belongs to him and his heirs. The gift was included in the *ifoga* ("forgiveness ceremony") after a serious altercation with a Tilo family member. The dispute over the separation agreement was referred for judicial resolution upon the Secretary of Samoan Affairs' issuance of the jurisdictional certificate of irreconcilable dispute after unsuccessful mediation proceedings, under A.S.C.A. § 43.0302.

On April 12, 1993, after the controversy was transferred to the Court for resolution, Va`ailepu`a filed his required statement of the case, calling it a "Petition for Quiet Title." He reiterated his position outlined above. It also now appears (*see* discussion *infra*) that he was principally opposing Eliga's facial attempt to separate a structure for the Palyos located on the Tufaga family's communal land named Amouto. This action then remained dormant until 2002.

---

[1] We take judicial notice, on our own motion, of the Territorial Registrar's *matai* title register for Aua, as the official public record of information relevant to the issues in this case.

On October 10, 2002, the Court permitted Intervenor Ponausuia Lusi Fale ("Ponausuia") to join the action. Ponausuia, the *sa'o* of the Ponausuia family, also objected to the separation agreement. He and Lafoaina are siblings. However, he claimed that the house was originally constructed and owned by their parents on communal land of the Ponausuia family, known as "Amouto," not the Tilo family. A certificate of irreconcilable dispute was issued for this controversy between the Palyos and Ponausuia prior to his intervention. Ponausuia's intervention also prompted Vasaga to file a statement of the Tilo family's claim on October 10, 2002. Eventually, on March 10, 2003, the Palyos filed their separate statement of the case.

Then, on March 27, 2003, the Palyos moved for relief against Ponausuia and his son Mark Fale, as occupants of the house at issue. Specifically, the Palyos sought either payment of both accrued rent and rent due in the future, or payment of accrued rent and removal from the premises, and to have the funds deposited in the Court's Registry pending the action's determination. At the motion hearing on April 15, 2003, the Court deferred ruling on the rent issue until the trial and scheduled the trial to begin on April 21, 2003.

The trial went forward on April 21 and 22, 2003. The Court accepted the parties' agreement to initially take evidence pertaining only to the house at issue, specifically ownership and rent issues, and to postpone the trial on the ownership of the land at issue. However, after receiving the evidence on the house at issue, the Court deferred deciding the ownership and rent issues until the trial on the ownership of the land at issue was also completed. The further trial was scheduled on June 25-27, 2003, was continued to August 14-15, 2003, and actually reconvened on August 15. On August 15, the parties informed the Court that they had settled and presented their stipulations on the ownership of the land at issue. The parties also agreed that relevant statements of Liufau Tanielu Sonoma ("Tanielu"), the present Liufau family's *sa'o*, if obtained by way of either deposition or affidavit and filed, would be considered as evidence in the case.

## Discussion

### I. The Land at Issue

On August 15, 2003, the parties stipulated to certain facts regarding the land at issue, and we find accordingly.

The land at issue, on which the house at issue is located, is a portion of the Liufau family's communal land, known as "Mapu."[2] The land at

---

[2] The Palyos and Ponausuia claim that the decision in *Liufau v. Siautafa,*

issue borders a stream.  The immediately adjacent land on the other side of the stream is the Tufaga family's communal land, known as Amouto. This adjacent land was given to the Tufaga family as part of the *ifoga* following an altercation many years ago in which a member of the extended Liufau family spilled the blood of a member of the Tufaga family.  *See Tufaga v. Liufau*, 1 A.S.R. 184, 186 (Land & Titles Div. 1909).  The portion of Amouto across the stream is separate and distinct from Mapu, the land at issue.  Clearly, once Va`ailepu`a understood that the separation agreement for the house at issue does not affect the Tufaga family's communal land Amouto, he had nothing at stake in the present controversy and effectively withdrew his objection to the separation agreement.

On August 15, the parties also stipulated that the members of the Liufau and Tilo families are together one family.  In Tanielu's affidavit filed on September 5, 2003, he confirmed this family unity and added that the Ponausuia family is also related to the Liufau family.  On August 15, the parties further stipulated that the holder of the Tilo title has authority to handle transactions concerning the Liufau family's communal lands in the absence of the Liufau titleholder.  Tanielu, however, maintains that the Tilo titleholder is the second ranking *matai* ("chief") of the Liufau family and can permit use of Liufau communal land only when the Liufau title is vacant and the proposed use is discussed and approved at a meeting of Liufau *matai* and other family members.

Tanielu was registered as the Liufau titleholder on June 7, 1999.  His predecessor was Liufau Filipo ("Filipo").  Filipo was registered as the Liufau titleholder on March 25, 1981, and died on February 4, 1995.[3] Filipo was a Senator in the Legislature of American Samoa and had been a longtime resident of the territory at the time of his death.  The Liufau title was vacant for approximately four years between the reigns of Filipo and Tanielu.  However, Filipo held the Liufau title, and was not in any sense absent as the titleholder in 1992 when Eliga and the Palyos entered the separation agreement at issue pertaining to the Liufau communal land at issue.

---

LT No. 8-76, *aff'd* AP No. 3-79, held that the land at issue is the Liufau family's communal land, with res judicata impact on the present case. We would normally take judicial notice of this case to determine its bearing, if any, on the case at hand.  However, neither the trial court's decision nor the appellate court's decision is present in the disrupted, and perhaps looted, case files.  We cannot, therefore, make use of the LT No. 8-76 and AP No. 3-79 decisions for purposes of determining the present case.  It does not matter, however, in light of the stipulation, joined by all parties, during the trial proceedings on August 15, 2003.

[3] We take judicial notice of Filipo's death certificate.

## II. The House at Issue

The house at issue on the land at issue is approximately 55 feet wide and, including front and back porches, 78 feet long. The width side of the house runs approximately parallel with and is situated approximately 40 feet from the northerly or mountain side of the main public road in Aua.

Lafoaina's parents constructed the original house on this site. In 1981, after Eugene retired from the U.S. Marine Corps, the Palyos moved to American Samoa and resided in the existing house of Lafoaina's parents, with the parents' permission, for several years. By 1991, the house needed extensive renovation, and the Palyos began to undertake aspects of this project. From 1996 to 1998, after the separation agreement at issue was signed and Va`ailepu`a objected to its registration in 1992, the Palyos essentially rebuilt the house, expending approximately $40,000, and put in new furniture and furnishings, costing them approximately $10,000. The completely renovated house is now the house at issue.

Eugene is an ordained *faife`au* ("minister"). For the last several years, he has been the pastor of a church in Malaeimi, a village substantially removed from Aua, and beginning in 1995, the Palyos have lived in a residence provided by and nearer to this church. Hence, the Palyos decided to rent the house at issue to another until Eugene retired from his ministry. They rented the house at issue to Mark Fale ("Mark"), Ponausuia's son. The Palyos, as the landlord, and Mark, as the tenant, signed the Rental Agreement on September 12, 2000. The agreement does not expressly state a lease term, but read as a whole, the tenancy is a month-to-month. The stated rent is $350.00 per month, payable on the 15th day of each month, beginning September 15, 2000. Mark paid the rent only for the first three months and nothing since then. The amount of unpaid rent was $11,550 at the conclusion of the trial on August 15, 2003.

Ponausuia considers any house located approximately where his parents first constructed their house on the land at issue to be his parents' home. Ponausuia maintains that he and his immediately family members have as much right to live in the existing house rent free as does his sister Lafoaina. Ponausuia resided outside of American Samoa at the time the Rental Agreement was entered. However, he learned of the agreement and instructed Mark to stop paying the rent. Ponausuia and his wife returned to American Samoa in 2002. They moved into and, with Mark, have since lived in the house at issue.

## III. Analysis of the Legal Issues

On July 8, 1992, the Palyos and Eliga signed a separation agreement seeking to separate the house at issue from the Tilo family's communal

215

land. Ponausuia, who currently resides in the house, intervened claiming an interest in the house at issue. We find the separation agreement is invalid because Eliga was not authorized to execute it as the house at issue is actually on the Liufau family's communal land.

■ Under A.S.C.A. § 37.1502(a), "[t]he senior *matai* in charge of communal lands belonging to his family" has the authority to enter into separation agreements. *See also* A.S.C.A. § 37.1503 ("[T]he agreement shall be executed on behalf of the owners of the land by the *matai* of the family."). Since the house is located on the Liufau family land, the senior *matai* in charge of these lands was the appropriate person to execute the separation agreement. However, Eliga, the registered Tilo titleholder, signed the agreement. According to Tanielu, Eliga, as the second ranking *matai*, could not sign the separation agreement unless the Liufau title was vacant and a meeting was held to approve the agreement. Neither of these conditions was met as of the time of signing of the separation agreement at issue. Contrary to the assertions made in the Palyos' closing argument, at the time of the execution of the agreement, Filipo held the Liufau title. Moreover, there is no evidence that a meeting was ever held to discuss and approve the agreement. Because Eliga was not entitled to enter into this transaction regarding Liufau family lands, the separation agreement between the Palyos and Eliga is invalid.[4]

■ The Palyos also seek unpaid rent payments from Mark and Ponausuia for their use of the house. Mark is not a party to this case and therefore, the Palyos may not recover against him. In any event, the Palyos purported to lease the house to Mark prior to a determination regarding the separation agreement. The Palyos, absent a valid separation agreement or any other authority, do not have a valid lease with Mark. *Fagasoaia v. Fanene*, 17 A.S.R.2d 91, 94 (Land & Titles Div. 1990) (finding no lease existed when "[t]he people who signed the documents purporting to create various contract and/or property rights in these buildings had no authority to do so.").

■ Likewise, the Palyos cannot obtain rental payments from Ponausuia. Without a valid separation agreement, the house is simply not the Palyos to lease. Although Ponausuia's occupancy of the house seems grossly unfair, this issue is not for us to decide. This decision is presently best left to Tanielu as the Liufau titleholder. In deciding how to allocate the house at issue, we encourage Tanielu to take into account the history of the house and note that the house has been occupied by Lafoaina and Ponausuia's family for many years. We also encourage Tanielu to consider the time, effort and expense the Palyos have devoted to

---

[4] We need not decide whether the agreement is also invalid because it described the land as "Amouto" rather than "Mapu."

remodeling the house. Should Tanielu decide not to allow the Palyos to live in the house, we strongly encourage him to offer them compensation for the improvements they have made on the house.[5]

■ As a final matter, the Palyos claim the house contains $10,000 worth of furniture and furnishings, which they contributed to the house after the remodeling. If Tanielu does not allow the Palyos to occupy the house, the Palyos are entitled to remove the furniture and furnishings and any of their other removable personal property from the house. *See Leomiti v. Pu'efua*, 27 A.S.R.2d 150, 154 (Land & Titles Div. 1995).

## Order

1. The July 8, 1992 separation agreement entered into between Eliga Tilo and the Palyos is null and void.

2. The Palyos are not entitled to any rental payments from Ponausuia or Mark.

3. The Palyos are entitled to remove any of their furniture, furnishings, and other removable personal property from the house.

It is so ordered.

---

[5] Any attempt by the Palyos to recover the value of the improvements to the house would be against the Liufau family. However, since no one from the Liufau family is a party to this action, we decline to express any opinion on the merits of such an action.